ABIGAIL ARMSTRONG *vs.* URIEL CROCKER & another.

To a bill in equity for an account of sales of a book alleged to have been published by the defendant on the joint account of the plaintiff and himself, an answer which denies that any such book was published during the time alleged, and asserts that the book published by the defendant was a different one, need not render an account of sales.

A bill in equity by the executrix of her deceased husband alleged that the plaintiff was inexperienced and unskilled in the care and management and in the value of property, and that the defendant undertook the general management of her affairs, volunteering his advice to her in all matters of business, and that the plaintiff had full confidence in the defendant and relied upon him to advise and aid her in her transactions, and did not buy or sell or lease property without the aid of his judgment. *Held,* that the answer sufficiently met this allegation by stating that the defendant could only refer to the plaintiff's declaration that her husband was in the habit of communicating to her his business transactions; that, although his property was large, it was such that its value and income, if not fully known, could be exactly ascertained by her upon the slightest inquiry; and that the plaintiff never expressed to the defendant any doubt of her capacity to take charge of all her property and protect all her interests, nor had he any doubt thereof; and which then stated in detail the facts of their intercourse, denying that the defendant ever acted for the plaintiff as an agent or in a confidential capacity. *Held further,* that if the answer alleged that the plaintiff asked of third persons questions relative to her property, it need not state of what persons or concerning what property such questions were asked.

An allegation in a bill in equity, that the plaintiff repeatedly asked the defendant for his bill, is met by an admission in the answer that the plaintiff asked the defendant what she should pay him.

A bill in equity to compel the surrender of a lease alleged that the defendant, before anything was said on the subject by the plaintiff, applied to the plaintiff and solicited of her an extension of the building occupied by him, and a renewal of the lease, and then particularly set forth interviews between them, and that the defendant importuned her to renew the lease, and by these repeated applications and protracted importunities the plaintiff was persuaded to renew the lease on the terms desired. *Held,* that these allegations were sufficiently met in the answer by averring that the plaintiff herself, without any inquiry or allusion to the subject on the defendant's part, inquired if the defendant would so extend the building and take the lease; and by admitting the several interviews set forth in the bill, but averring that they were always conducted pleasantly, and that the defendant always allowed the plaintiff time for consideration; and by wholly denying that any of the pretended grievances, deceptions, fraudulent doings, importunities, persuasions and entreaties alleged in the bill were committed or practised by the defendant, and averring these charges were untrue. But that an allegation in the bill that the plaintiff asked the defendant if he thought the rent agreed upon was a fair one, and that he answered affirmatively, was material and should be directly met in the answer.

BILL IN EQUITY by the widow and executrix of Samuel T. Armstrong against the firm of Crocker & Brewster, book publishers, to compel them to account for the profits of the publication of the books commonly called " Christian Psalmody,"

" Select Hymns and Watts entire," and for the profits of cer‑ tain lands and stocks, and to compel them to surrender to her the lease of a building on Washington Street in Boston alleged to have been fraudulently obtained from her. The opinion ex‑ hibits so much of the case as is material to the understanding of the questions of law decided.

*G. M. Browne,* for the plaintiff.

*H. F. Durant,* for the defendants.

MERRICK, J. This case comes before the court upon the re‑ port of the master to whom were referred the numerous objec‑ tions taken by the plaintiff to various alleged insufficiencies of the defendants' answer to the bill. He reports that several of those exceptions ought to be sustained. But it is objected that his decisions in reference to each and all of these particulars are erroneous; and the questions now to be considered and deter‑ mined arise upon the objection.

1. The master is of opinion that the answer is deficient, in not giving the account of sales demanded in the bill, and therefore to this extent that the plaintiff's exceptions should be sustained. And this he affirms upon the general principle that, although a defendant denies the title of the plaintiff and sets up one in himself, he must answer fully, if he answers at all. Story Eq. Pl. § 845 *& seq.* But this case affords no occasion for the appli‑ cation of that principle. The defendants do not deny the title of the plaintiff, and set one up in themselves, to the books called " Christian Psalmody " and " Select Hymns and Watts entire," but deny the publication or sale of these works during any part of the time in respect to which they are called upon to account; and assert the publication and sale of a distinct work, in which they allege that Armstrong had no interest whatever. They do therefore in effect assert that there were no such sales as those of which an account is demanded. And it is a necessary con‑ sequence of this allegation, that no such account exists, and therefore that none such can be rendered. This is explicit, and shows that the answer is not obnoxious to the objection made to it.

2. The master reports that so much of the plaintiff's third

exception as relates to the allegation of her inexperience in business, and of the fiduciary relation of one of the defendants to her, should be sustained, and that the defendants ought in that respect to be required to answer more fully and directly.

The plaintiff's allegation in the bill is that at the time of the decease of her husband she was inexperienced and unskilled in the care and management and in the value of property, and was obliged necessarily to rely on the advice and judgment of some person conversant with business ; and that the defendant Crocker, having been in habits of intimacy with her husband and herself, then and afterwards took upon himself the general direction of arrangements in regard to the affairs of the deceased, volunteering his aid, counsel and advice to the plaintiff in all matters of business, and in regard to the ordering and disposition of all her material affairs, and that she had entire confidence in the defendants, and relied upon Crocker especially to advise and aid her in her transactions, and did not buy or sell or lease property without the aid of his judgment.

To the first part of this allegation the defendants' answer that they " can only refer to her own declaration, that her husband was in the habit of communicating to her his business arrangements and transactions ;" and they further say that, although the amount of his property was very large, his investments " were such that their value and income, if not fully known by her, could be exactly ascertained by the slightest inquiry ; and that until the filing of this bill she never expressed to either of the defendants any doubt of her capacity to take charge, herself alone, of all her property and protect all her interests ; nor had they ever any doubt in that behalf."

The answer further alleges that, upon the death of Mr. Armstrong, the defendant Crocker, " having been sent for by the plaintiff, and requested by her to assist her, did offer his services to her freely and fully, as accorded with the intimacy and friendship so long before existing as aforesaid ; and at her request undertook the general direction of the funeral arrangements, and also of the arrangements for the settlement of the estate of the deceased in the probate court ; " that he collected rents under a

power of attorney from her; and that she " sometimes conversed with the defendant Crocker about her property and affairs, and not unfrequently asked his friendly advice, which he always cheerfully gave her to the best of his judgment, but not as agent or in any confidential capacity."

In stating the actual relations which subsisted between the plaintiff and the defendants, and the aid and assistance afforded to, and the business transacted for her by them, there does not appear to be any substantial omission in responding to all of the material parts of the bill to which the exception applies. Her alleged inexperience in business, and their alleged fiduciary relation to her, are clearly met and substantially denied ; and the answer must in this respect be considered sufficient.

3. The eleventh exception asserts that the defendants do not in terms deny that the plaintiff asked Crocker for her bill as she alleges that she had done; and the master is of opinion that this exception should for this reason be sustained. It seems to be quite immaterial whether she did or did not ask him for his bill; but, whether it was so or not, the statement that she did inquire of him what she should pay him, and that he replied that he should be satisfied with whatever sum she should think fit to give, is a sufficient answer to her allegation upon this subject.

4. In reference to the fourteenth exception, the master is of opinion that the defendants' answer that " the plaintiff asked of other persons besides the said Crocker as to the proper annual rent of buildings and stores in the immediate vicinity of her store," but without stating " of whom, or as to what property, she made such inquiries, nor in regard to the rent of what property," is insufficient. The inquiries however, which were made by her, concerned facts which, if they ever occurred, may justly be presumed to be within her own personal knowledge ; and therefore when the defendants referred or alluded to these inquiries, as tending to show that she did not rely exclusively, or at all, upon their representations, it was unnecessary that they should particularly specify either the persons of whom, or the property concerning which, the inquiries were made.

5. The twenty-fifth, twenty-sixth and twenty-eighth exceptions are all founded upon the assumption that the plaintiff's allegation, that Crocker, one of the defendants' firm, and before anything was said on the subject on her part, applied to her and solicited of her an extension of the store then occupied by them, and of the leases thereof, is not fully and clearly denied in the answer ; and for this reason these exceptions should, in the opinion of the master, be sustained. But this seems to be an inaccurate and unwarrantable conclusion. The defendants assert in their answer that the plaintiff, of her own accord, and " without any inquiry or allusion to the subject on their part, did herself inquire of Crocker if they would so extend the store and take the leases." This is in effect a clear and plain denial of her allegation on the subject, and is therefore all that can be required of them.

6. The bill alleges in substance that the lease of the store to the defendants was obtained by them of the plaintiff by means of the protracted, excessive and unreasonable importunities of Crocker; and it proceeds to state, at great length and in very minute detail, the conversation which took place between him and her at their various interviews which preceded and continued up to the time of the execution of the lease. And she excepts to the answer, on the ground that the various charges specifically and distinctly set forth in the bill are not specifically and distinctly denied in the answer. The master reports that the answer is insufficient, and that this, her thirty-ninth, exception ought to be sustained. All that is really material in the various statements and allegations of the plaintiff consists in her averment and charge, that the lease was obtained of her by excessive and persevering importunity. The answer, admitting that the several interviews referred to took place between the parties, avers that they were always conducted pleasantly, and always allowed the plaintiff time for consideration ; and then it wholly denies that all or any of the pretended grievances, deceptions, fraudulent doings, importunities, persuasions, entreaties and appeals alleged in the bill were ever done, committed or practised by Crocker, and avers that all the charges thus made

are wholly untrue. This is full, direct and explicit, and thus meeting and denying in clear terms the only material allegation on this part of the bill, the answer appears to be subject to no valid objection.

7. The twenty-ninth exception, after referring to the averment in the bill that the plaintiff in one of the interviews between them, which preceded the execution of said lease of said store, asked Crocker, in reference to what was a just and reasonable rent for the store, in direct terms, "Do you think that $1500 is a just and fair rent?" asserts that the answer nowhere admits, denies or alludes to this specific charge so directly set forth. The master reports that he is of opinion that this exception is well taken and should be sustained. And in this conclusion we think he is correct. This allegation does not appear to have been anywhere, either in direct terms or in substance, met by the answer. And this being a material allegation, and not denied or replied to, the omission of the defendants fully to reply to it affords just cause of exception.

The conclusion from all these considerations, is that the twenty-ninth exception of the plaintiff to the sufficiency of the defendant's answer is sustained, and that all the other exceptions are overruled. *Order accordingly.*